UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **NORTH AMERICAN LIGHTING, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**LIGHTING PRODUCTS, INC.,** )<br>)<br>**Defendant.** ) | <br><br><br><br>Case No. 08-2038 |

# REPORT AND RECOMMENDATION

In February 2008, Plaintiff North American Lighting, Inc. (hereinafter "NAL"), filed a Complaint (#1) against Defendant Lighting Products, Inc. (hereinafter "Lighting Products"), alleging breach of contract. Federal jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.

In March 2008, Defendant Lighting Products filed a Motion To Dismiss, or in the Alternative, Motion To Transfer Venue (#9). After reviewing the pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant's Motion To Dismiss, or in the Alternative, Motion To Transfer Venue **(#9)** be **DENIED**.

## I. Background

Plaintiff alleged the following information in its complaint. Plaintiff is a Michigan corporation with its principal place of business in Illinois. (#1, ¶ 4.) Defendant is an Ohio corporation with its principal place of business in Ohio. (#1, ¶ 4.) From March 2007 through July 2007, NAL entered into purchase orders in writing with Lighting Products for materials that Lighting Products used to manufacture parts for Harley Davidson, Inc. (hereinafter "Harley Davidson"). (#1, ¶ 6.) NAL issued invoices based on these orders that Lighting Products did not pay. (#1, ¶¶ 7-9.) NAL states that it has attempted to mitigate damages, including repossessing some of the materials and attempting to resell some of the materials. (#1, ¶ 12.) Based on this

background, Plaintiff alleges breach of contract or, in the alternative, account stated or *quantum meruit*. (#1, pp. 3-5.)  Plaintiff seeks damages in the amount of $481,679.70. (#1, ¶ 19.)

In support of Defendant's motion, Seymour Stein, president of Lighting Products, filed an affidavit asserting the following information. Harley Davidson directed Defendant to order product from NAL and did not permit Defendant to purchase from any other supplier. (#9-2, ¶¶ 2-3.) Defendant does not regularly conduct business with NAL other than business necessary to fulfill its supply relationship with Harley Davidson. (#9-2, ¶ 12.) Defendant did not negotiate the price terms, travel to Illinois, or conduct or attend any meetings with NAL in Illinois regarding these products. (#9-2, ¶¶ 4-6.) All manufacturing and use of products purchased from NAL occurred at Lighting Products' plant in Ohio. (#9-2, ¶ 9.) Less than one-eighth of one percent of Lighting Products' 2007 sales occurred in Illinois and Lighting Products does not regularly conduct business in Illinois. (#9-2, ¶¶ 13-14.) All of Lighting Products' employees that are potential witnesses, and all of the product at issue remaining in Lighting Products' control, are located in Ohio. (#9-2, ¶¶ 7-8.)

In April 2008, Plaintiff filed a response to Defendant's motion, three affidavits, and two exhibits. The exhibits included (1) a copy of a magazine article from January 1999, indicating that Lighting Products had business relationships with three Illinois companies, Peterbilt, Freightliner, and Navistar International, and (2) a copy of a website page entitled "Contact Us" indicating that Lighting Products has Ohio-based sales representatives assigned to Illinois territory. (#11-2, pp. 10-11.)

Plaintiff also filed an affidavit from Susan Lang, a Lighting Products employee from May 2002 through June 2005. (#11-3, ¶ 2.) During that time, Lang worked as plant manager and as the account representative for the Harley Davidson account. (#11-3, ¶ 2.) Lang states that NAL and Lighting Products began a business relationship around September 2003 when Lighting Products requested a quote from NAL in order to fulfill a request from Harley Davidson. (#11-3, ¶ 3.) From September 2003 through June 2004, Lang or other Lighting Products representatives contacted NAL via telephone or e-mail on nearly a daily basis. (#11-3, ¶ 4.) From the product

2

launch in June 2004 up to Lang's departure in June 2005, Lang or another representative contacted NAL in Illinois on a weekly basis. (#11-3, ¶ 6.) Lang also states that, from September 2003 until June 2005, Lighting Products issued purchase orders directly to NAL in Flora, Illinois. Lighting Products' hauler picked up the products from a NAL facility in Illinois and delivered them to the Lighting Products plant in Ohio. (#11-3, ¶ 5.) Between June 2004 and June 2005, either Lang or another Lighting Products representative contacted NAL more than once to negotiate a reduced price. (#11-3, ¶ 7.) In July 2004, Lang traveled to Flora, Illinois, on Lighting Products' behalf to observe NAL's production facilities and discuss quality control issues. (#11-3, ¶ 8.)

NAL also filed the affidavit of Patsy Conley, a NAL customer service representative since April 1991. (#11-4, ¶ 2.) Conley states that NAL and Lighting Products had an ongoing business relationship from September 2003 until approximately July 2007, during which time NAL provided parts to Lighting Products for placement into headlamps for Harley Davidson. (#11-4, ¶¶ 3-4.) Lighting Products submitted purchase orders to NAL in Illinois on a weekly basis, NAL created invoices for those parts, and Lighting Products remitted payment to NAL in Illinois. (#11-4, ¶¶ 5-7, 9.)

**II. Standard**

When considering a motion to dismiss, the Court must accept all well-pleaded factual allegations in the claim as true, and draw all reasonable inferences in favor of the plaintiff. *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004). The Court should dismiss the claim if the plaintiff fails to assert a set of facts plausibly suggesting that it is entitled to relief, "raising that possibility above a 'speculative' level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S. Ct. 1955, 1965, 1973 n.14 (2007)).

A motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). The plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Jennings v. AC Hydraulic A/S,* 383 F.3d

546, 548 (7th Cir. 2004).  In ruling on a motion to dismiss for lack of personal jurisdiction, courts are not limited to the facts set forth in the complaint, but rather may receive and consider affidavits from both parties.  *Nelson v. Park Inds., Inc.,* 717 F.2d 1120, 1123 (7th Cir. 1983).  The Court accepts all well-pleaded jurisdictional allegations in the complaint as true unless controverted by affidavit.  *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002).  If a defendant supplies affidavits challenging personal jurisdiction, a plaintiff must meet those assertions with affirmative evidence that supports the presence of jurisdiction.  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).  The Court must resolve any conflict presented by affidavits in the plaintiff's favor.  *Hyatt*, 302 F.3d at 713.

When a challenge to personal jurisdiction is based solely on the parties' written materials, the plaintiff need only make a *prima facie* showing that the court can properly exercise jurisdiction over the defendant.  *Purdue*, 338 F.3d at 782; *Hyatt*, 302 F.3d at 712-13.

### III.  Analysis
#### A.  Personal Jurisdiction

Defendant argues that the Court cannot exercise personal jurisdiction over it for two reasons, as follows:  (1) Lighting Products' contacts with NAL in Illinois regarding the transactions from which the claims arise are insufficient to establish specific jurisdiction; and (2) Lighting Products' contacts in Illinois are not continuous and systematic enough to establish general jurisdiction.  Plaintiff responds that Lighting Products' contacts with NAL and the state of Illinois are adequate to establish both specific and general jurisdiction.

A federal district court asserting jurisdiction based on diversity has personal jurisdiction over a party only if a court of the state in which it sits would have jurisdiction.  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  To determine whether personal jurisdiction exists this Court considers:  (1) whether the Illinois long-arm statute authorizes the exercise of personal jurisdiction over the defendant; (2) whether the exercise of personal jurisdiction would comport with due process under the Illinois Constitution; and (3) whether the

exercise of personal jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment. *See id.* at 1276.

### 1. Illinois Long Arm Statute

The catch-all provision of the Illinois long-arm statute allows Illinois courts to exercise personal jurisdiction to the maximum extent permitted by either the Illinois or Federal Constitution. *See* 735 ILL. COMP. STAT. 5/2-209(c) (2006). Consequently, the Illinois long-arm statute reaches any defendant that due process will allow and "the two-step inquiry folds into one: whether an exercise of personal jurisdiction . . . would offend [d]ue [p]rocess." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed. Cir. 1998).

### 2. Illinois Constitution

Although the Illinois Supreme Court has stated it considers the due process clause of the Illinois Constitution separately from the Due Process Clause of the Fourteenth Amendment, it has not provided any guidance as to the nature of the distinction. *Hyatt*, 302 F.3d at 715. As a result, for analytical purposes, there is "no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Id.* Therefore, this Court will analyze due process under the Federal Constitution.

### 3. Federal Due Process

"Due process requires only that . . . [a defendant] have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A plaintiff may establish personal jurisdiction where the Court has (1) specific jurisdiction based on claims relating to or arising out of the defendant's contacts with the forum (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)), or (2) general jurisdiction based on contacts of a "continuous and systematic nature" (*Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984)).

### a. Specific Jurisdiction

Defendant first argues that this Court cannot exercise personal jurisdiction over Lighting Products based on specific jurisdiction. For the Court to exercise specific jurisdiction over a nonresident defendant, the defendant must have purposefully established minimum contacts within the forum State, and the assertion of personal jurisdiction must comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

Specific jurisdiction requires less contact with a state than does general jurisdiction, but the litigation must arise out of those contacts. *Logan Prods. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). The defendant must have minimum contacts with the forum state sufficient to conclude that it purposefully availed itself of the privileges of conducting activities in the forum so that the defendant should reasonably anticipate being haled into court there. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Rudzewicz*, 444 U.S. 286, 297 (1980). Unilateral action by a third party not directly involved in the claim is insufficient to establish minimum contacts. *Hanson*, 357 U.S. at 253; *see also FMC Corp. v. Varonos*, 892 F.2d 1308, 1314 (7th Cir. 1990) (focusing on the voluntariness of defendant's actions to establish jurisdiction). The crux of the analysis is therefore whether the defendant could reasonably foresee being subject to litigation in the forum and thus avoid jurisdiction by surprise. *See World-Wide Volkswagen*, 444 U.S. at 297.

Courts consider a number of factors in the context of the business relationship between the parties when evaluating whether a defendant has purposefully established minimum contacts within a forum. *Burger King*, 471 U.S. at 479; *Logan Prods.*, 103 F.3d at 53 (when determining whether specific jurisdiction exists, courts are not limited to "only those contacts directly arising out of the deal" giving rise to the claim; instead, they consider the overall relationship between the defendant, the forum, and the litigation). The existence of a contract between an individual in the forum state and an out-of-state defendant does not, by itself, automatically establish minimum contacts. *See Burger King*, 471 U.S. at 478 (considering "prior negotiations and contemplated

future consequences, along with the terms of the contract and the parties' actual course of dealing"); *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (stating that minimum contacts are established based on a broad analysis of "the relationship among the defendant, the forum, and the litigation"); *Mac Funding Corp. v. Ne. Impressions, Inc.*, 215 F. Supp. 2d 978, 981 (N.D. Ill. 2002) (noting that courts look to a variety of factors surrounding the overall business relationship to determine minimum contacts).

Defendant argues that the Court cannot properly exercise jurisdiction over Lighting Products because Lighting Products did not conduct any negotiations in Illinois, execute any contracts in Illinois, or travel to Illinois regarding its relationship with NAL. Defendant states that the only contacts it initiated with NAL were phone calls, faxes, purchase orders, and remitting payments to NAL in Illinois. Defendant contends that these contacts are merely fortuitous and do not "demonstrate a real relationship with the state with respect to the transaction at issue." *Purdue*, 338 F.3d at 780. Defendant also asserts that, because it did not initiate a relationship with NAL independently, but did so at the behest of Harley Davidson, all of its resulting contacts with NAL in Illinois are fortuitous and insufficient to constitute a basis for the exercise of specific jurisdiction.

Viewing the facts in the light most favorable to Plaintiff, Defendant had an ongoing relationship with NAL for approximately four years, purchased parts from Plaintiff for approximately three years, and hired a contract carrier to pick up the parts in Illinois for approximately three years. Lighting Products representatives contacted NAL in Illinois to negotiate a reduced price on at least two occasions and a Lighting Products representative traveled to the NAL facility in Illinois to examine its production capacity. In addition to the companies' history of general communication and contacts, including telephone calls or emails once a week or more for four years, they maintained a business relationship of sales transactions valued at over $100,000 in 2007. Based on this information, this Court concludes that Lighting Products' relationship with NAL satisfies the minimum contacts requirement and these contacts

were not fortuitous or inadvertent. Therefore, Lighting Products could reasonably foresee being sued in an Illinois forum.

Defendant overstates the significance of Harley Davidson's involvement. Although important to the minimum contacts analysis, the identity of the entity that initiated the relationship is only one factor to be considered. *See Hanson*, 357 U.S. at 253 (considering the "quality and nature of the defendant's activity" to determine if defendant has voluntarily and purposefully conducted activity in the forum); *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.*, 597 F.2d 596, 600-01 (7th Cir. 1979) (stating that one should look at the entirety of a defendant's actions and contacts with a forum). Even though Harley Davidson directed Lighting Products to purchase parts from NAL, Lighting Products still made an independent and voluntary decision to enter into a business relationship with NAL. The Court concludes that, by voluntarily engaging in a business relationship with NAL involving many contacts over a span of years, Lighting Products purposefully availed itself of the laws of Illinois such that it could reasonably anticipate being sued in the forum. Therefore, the fact that the relationship between the two parties was initiated at the behest of Harley Davidson does not eliminate the consideration of other contacts.

Even if a defendant establishes sufficient minimum contacts with a forum, a court may not assert jurisdiction when it is unfair or unduly burdensome to do so, violating traditional notions of fair play and substantial justice. *Asahi Metal Indus. v. Sup. Ct.*, 480 U.S. 102, 116 (1987) (Brennan, J., concurring) (stating that the court could not assert jurisdiction over a dispute between two foreign litigants because it was unfair, even though the plaintiff had established that the defendant had sufficient minimum contacts with the forum). Here, it is not unfair or unduly burdensome to require Lighting Products, an Ohio corporation, to travel to Illinois to contest an action against an Illinois corporation. Traditional notions of fair play and substantial justice do not require that a defendant should only have to litigate in the forum that is the most convenient for the defendant, as this would make a plaintiff's choice of forum irrelevant. Here, the Court finds that asserting specific jurisdiction over Defendant Lighting Products does not violate

traditional notions of fair play and substantial justice. Thus, the Court can properly exercise personal jurisdiction over Defendant.

### b. General Jurisdiction

Defendant next argues that this Court cannot exercise jurisdiction over it based on general jurisdiction because Lighting Products maintains only trivial contacts with Illinois accounting for less than one-eighth of one percent of its total sales in 2007.

As noted above, a court may exercise general jurisdiction over a defendant who maintains continuous and systematic contacts with the forum state even when the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 416. However, because the Court concludes that it has specific jurisdiction over Defendant, the Court need not discuss general jurisdiction.

### B. Venue

Defendant next argues that this Court should transfer venue to the Northern District of Ohio, where Defendant has its principal place of business. Defendant contends that the Northern District of Ohio is a more convenient forum because all of Defendant's employees are located in that forum and all of the items NAL shipped to Defendant that have not been returned are stored there.

A federal district court may transfer any civil action to another appropriate venue if it will serve the convenience of the parties and witnesses and the interest of justice. 28 U.S.C. § 1404(a). The Court has discretion to transfer venue, but the movant bears the burden to prove that transfer is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

In this case, Defendant states that its employees may be called as witnesses and they are all located in the Northern District of Ohio. While the convenience of witnesses is usually an extremely important factor in deciding whether to transfer venue, the location and convenience of a parties' employees is given considerably less weight. *HollyAnne Corp. v. TFT Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999). Additionally, Defendant argues that transfer is appropriate because the disputed light bulbs are located in Ohio. The location of these bulbs, however, is not relevant to deciding whether to transfer venue. These items are not parties or witnesses, and their location does not have any bearing on the location of the action. *See* 28 U.S.C. § 1404(a). If either party would like to inspect the bulbs they may do so whether or not this matter proceeds in the Central District of Illinois or the Northern District of Ohio.

Based on Defendant's discussion of this issue, it appears that a change of venue would simply shift the inconvenience from one party onto the other. That is not an adequate basis for a transfer of venue. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Accordingly, the Court recommends denying the motion to transfer venue.

### IV.   Summary

For the reasons set forth above, this Court recommends that Defendant's Motion To Dismiss, or in the Alternative, Motion To Transfer Venue **(#9)** be **DENIED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objection on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 9th day of July, 2008.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE